UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------
ABEL ORTIZ, :
:
                      Petitioner, :    REPORT AND
:     RECOMMENDATION
     - against - :
:     06 Civ. 0802 (LAP) (RLE)
N.Y.S. PAROLE IN BRONX, N.Y., :
:
                      Respondent. :
--------------------------------------------------------------

**To the HONORABLE LORETTA A. PRESKA, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* petitioner, Abel Ortiz ("Ortiz"), filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, which was received by the *Pro Se* Office in this District on January 20, 2006. On May 18, 2001, Ortiz was convicted of seven counts of riot in the first degree, New York Penal Law ("N.Y.P.L.") § 240.06, and seven counts of assault in the second degree, N.Y.P.L. § 120.05(6). He was sentenced to five-year terms on each assault count and one and one-third to four-year terms on each riot count, all terms to run concurrently. Ortiz was released to parole from the Collins Correctional Facility on July 1, 2005. *See* **Jones v. Cunningham**, 371 U.S. 236, 242-43 (1963) (petitioner who has been released to parole is in custody for purposes of federal habeas petition).

Ortiz claims that his constitutional rights were violated in that: 1) he was deprived of a fair trial because of the trial court's charge to the jury that "a [riot] participant is responsible for the consequences of the group's joint action or the conduct set in motion by the riot regardless of whether that person was actually there or present at the precise moment of the conduct," and 2) the evidence presented at trial was insufficient to support the conviction because it did not place

him on the scene at the time the actions underlying the charges occurred.  Petition under 28 U.S.C. § 2254 ("Pet.") ¶ 13.  For the reasons set forth below, I recommend that the petition be **DENIED**.

## II. BACKGROUND

A.    **Factual Background**[1]

On June 11, 2000, following the Puerto Rican Day Parade, a large group of men gathered in Central Park in Manhattan, near Central Park South and Sixth Avenue.  Declaration in Opposition to Petition for a Writ of Habeas Corpus ("Opp. Decl."), Exh. A at 3.  The group of men surrounded women walking through the section of the park, separating them from their companions, and wetting and groping them.  **Id**.  The men also ripped off the clothing of some women, touching their exposed breasts and vaginas, at times digitally penetrating the anus and vagina, and often stealing valuables.  **Id**. at 4-11.  Some of the women were punched and kicked by members of the surrounding group of men.  **Id**.

At trial, the jury was shown videotapes that placed Ortiz among a crowd of more than ten men partaking in these acts.  **Id**. at 4.  The videotapes placed Ortiz at the scene of the incidents from approximately 5:19 p.m. until approximately 5:47 p.m.  **Id**. at 21-22.  At 5:19 p.m., Ortiz is seen clapping and smiling while women are being squirted with water and groped.  **Id**. at 21, 26.  At 5:24 p.m., Ortiz is seen pumping his arm.  **Id**. at 22.  At 5:32 p.m., Ortiz is heard telling the

---

[1]This Court does not have Ortiz's trial records in their entirety.  The factual recitation herein is based upon the submissions by Ortiz and respondents both in this Court and on direct appeal to the New York Supreme Court, Appellate Division, First Department.  The Court finds that the current record suffices to resolve Ortiz's claims.  *See* 28 U.S.C. § 2254, Rule 5(c) ("If a transcript cannot be obtained, the respondent may submit a narrative summary of the evidence.");  *see also* **Elliott v. Kuhlmann**, 2004 WL 806986, at *2 (S.D.N.Y. Apr. 9, 2004); **Douglas v. Portuondo**, 232 F. Supp. 2d 106, 109, n.1 (S.D.N.Y. 2002).

crowd of men to "be quiet, the bitch is over there down the road by the pole." **Id**. The crowd is then seen moving towards the pole. **Id**. Ortiz is seen reaching and grabbing a female's breast. **Id**. At 5:47 p.m., Ortiz is seen clapping and laughing at the scene where a female who was being groped emerges from the crowd, and lifting up her top to expose her breasts. Opp. Decl., Exh. B at 16. Ortiz was also depicted by an eyewitness as restraining and groping a woman while others groped and digitally penetrated her anus and vagina. **Id**. at 7. Ortiz then left because the riot was "getting out of control." **Id**. at 51.

Ortiz was charged and convicted of seven counts of riot in the first degree and seven counts of assault in the second degree as a result of the group's actions against seven females. Opp. Decl., Exh. A at 1. ST was a twenty-nine year old newlywed visiting the United States for her honeymoon. She suffered lacerations to her upper thigh and vagina and had a necklace ripped off her neck and stolen. **Id**. at 4-5. ZK and SB were nineteen years old and seventeen years old, respectively. Men in the group reached under their clothes and touched their breasts and vaginas, dragged them both through the pavement and stole ZK's camera. **Id**. at 6-7. HI was a college student from England visiting the United States. **Id**. at 7-8. She had her clothes ripped off, her vagina and anus digitally penetrated, was punched in the face, dragged through the pavement and had her purse stolen. **Id**. SW was a twenty year old resident of New Jersey. **Id**. at 8-9. Her breasts and vagina were touched (over her clothes) by men in the group and she was kicked in the shin. **Id**. JD was a fifteen year old visiting the park. **Id**. at 9-10. She had her clothes ripped off, her buttocks touched, suffered a sprained knee and ankle, and had her necklace ripped off her neck and stolen. **Id**. MT came to the parade with her friend. **Id**. at 10-11. She was touched on her breasts (under and over her clothes) and vagina (over her shorts),

suffered bruises all over her body and had her necklace ripped off her neck and stolen.  **Id**.
Several other women were victimized by the same general sequence of events.  **Id**. at 11-21.

**B.     Procedural Background**

Ortiz's conviction was unanimously affirmed by the Appellate Division, First Department, on June 8, 2004.  Respondent's Memorandum of Law in Opposition to Petition for a Writ of Habeas Corpus ("Resp. Mem.") at 1.  Leave to appeal was denied by the New York Court of Appeals on October 22, 2004.  **Id**. at 1.  Ortiz subsequently filed the instant habeas corpus petition on January 20, 2006.

### III. DISCUSSION

**A. Timeliness and Exhaustion**

    **1.  Timeliness**

A petitioner must file an application for a writ of habeas corpus within one year of his conviction being final.  ***See*** 28 U.S.C. § 2244(d)(1).  A conviction becomes final "when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s]," that is, ninety days after the final determination by the state court.  **Williams v. Artuz**, 237 F.3d 147, 151 (2d Cir. 2001) (***quoting*** **Ross v. Artuz**, 150 F.3d 97, 98 (2d Cir. 1998)).  Because leave to appeal his conviction was denied on October 22, 2004, Ortiz's conviction became final ninety days thereafter, on January 20, 2005.  His petition, received in this District on January 20, 2006, is timely.

    **2.  Exhaustion**

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may not consider a petition for habeas corpus unless the

petitioner has exhausted all state judicial remedies.  28 U.S.C. § 2254(b)(1)(A); **Picard v. Connor**, 404 U.S. 270, 275 (1971); **Dorsey v. Kelly**, 112 F.3d 50, 52 (2d Cir. 1997).  In order to satisfy substantive exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature.  Although not an exacting standard, a petitioner must inform the state courts of "both the factual and the legal premises of the claim [he] asserts in federal court." **Jones v. Vacco**, 126 F.3d 408, 413 (2d Cir. 1997) (*quoting* **Daye v. Attorney Gen.**, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)).

Procedurally, Ortiz must have utilized all avenues of appellate review within the state court system before proceeding to federal court.  *See* **Bossett v. Walker**, 41 F.3d 825, 828 (2d Cir. 1994).  He must have raised a federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'" **Id**. (*quoting* **Pesina v. Johnson**, 913 F.2d 53, 54 (2d Cir. 1990).  Ortiz has met the exhaustion requirement as he raised the federal claims included in this habeas petition at all levels of the state courts.

**B.      Merits of the Claims**

The AEDPA constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  The Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1); *see* **Williams v. Taylor**, 529 U.S. 362, 412 (2000).  A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the

Supreme] Court on a question of law or if [it] decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." **Williams**, 529 U.S. at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

### 1. No Deprivation of Right to Fair Trial Imposed By Jury Instructions

Ortiz claims that he was denied a fair trial because of the trial court's instructions to the jury concerning riot participant liability under N.Y.P.L. § 240.06 for the actions carried out by fellow riot participants subsequent to a defendant's departure. "In order to obtain a writ of habeas corpus in federal court on the ground of error in a state court's instructions to the jury on matters of state law, the petitioner must show not only that the instruction misstated state law but also that the error violated a right guaranteed to him by federal law." **Casillas v. Scully**, 769 F.2d 60, 63 (2d Cir. 1985). The Appellate Division unanimously affirmed the legality of the trial court's instructions in finding that "[t]he riot statute permits a riot participant to be held criminally liable for the acts of other participants, in the course of the same continuing riot, even after his or her own participation may have terminated." *See* **People v. Ortiz**, 777 N.Y.S.2d 640 (1st Dep't 2004); *see* N.Y.P.L. § 240.06.[2]

Ortiz has not shown that the trial court's instructions on liability for the actions of other riot participants was a misstatement of state law. Although it appears that this is the first

---

[2]The riot in the first degree statute provides, in relevant part, that "[a] person is guilty of riot in the first degree when he [s]imultaneously with ten or more other persons, engages in tumultuous and violent conduct and thereby intentionally or recklessly causes or creates a grave risk of causing public alarm, and in the course of and as a result of such conduct, a person other than one of the participants suffers physical injury or substantial property damage occurs." N.Y.P.L. § 240.06.

instance of a New York court's interpretation of the riot statute finding a riot participant liable for harm caused by other rioters subsequent to his departure, the holding was consistent with New York's interpretation of other statutes. *See* **People v. Spivey**, 81 N.Y.2d 356, 361 (1993) (defendant need not be physically present at the scene of the crime to be convicted of felony assault where the assault was made on a nonparticipant in furtherance of the felony or of immediate flight therefrom). The holding was also consistent with other state courts' interpretation of their own riot statutes. *See, e.g.,* **State v. Beavers**, 394 So.2d 1218, 1225 (La. 1981) (finding that a participant's departure from a riot does not absolve him of liability from subsequent criminal conduct by other participants in the riot); **State v. Bad Heart Bull**, 257 N.W.2d 715, 719 (S.D. 1977) (finding that every person who participates in a riot acts at his own peril and may be held criminally responsible for the natural and probable consequences of the riot action).

The Appellate Division's interpretation of the riot statute was well within the scope of its powers. *See* **Ponnapula v. Spitzer**, 297 F.3d 172, 182 (2d Cir. 2002) ("Our federal Constitution does not dictate to the state courts precisely how to interpret their own criminal statutes.") Ortiz does not claim, and the Court does not find, that the interpretation of the statute was "so egregious as to be fundamentally unfair and thus violate . . . the fair notice aspect of the Due Process Clause." **Id.** at n.2. The interpretation is not contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. I recommend that this claim be **DENIED**.

    **2. Trial Evidence Was Sufficient to Establish the Essential Elements of the Crime**

Ortiz specifically claims that the evidence presented at trial was insufficient to prove his

guilt beyond a reasonable doubt because he was not present at the scene at the time the actions underlying the charges occurred.  The Court is required to consider the trial evidence in the light most favorable to the prosecution and uphold the conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  **Jackson v. Virginia**, 443 U.S. 307, 319 (1979) (emphasis in original); **Einaugler v. Supreme Court of the State of New York**, 109 F.3d 836, 839 (2d Cir. 1997).  Evidence of Ortiz's presence at the scene of the crime is not a necessary element for a conviction under N.Y.P.L. § 240.06, which requires that an individual, "creates a grave risk of causing public alarm."  Ortiz's actions caused such a risk even if he was not there when the harm occurred.  The trial court's interpretation of culpability based on earlier participation in the riot was consistent with New York courts' reading of liability under other criminal statutes, as well as other states' interpretations of their own riot statutes.  Ortiz's conviction is not contrary to, or involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  For the reasons discussed above, Ortiz's claim should be **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, I recommend that Ortiz's petition for a writ of habeas corpus be **DENIED.**  Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have ten (10) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable Loretta A. Preska, 500 Pearl Street, Room 1320, and to the chambers of the undersigned, Room 1970.  Failure to file timely objections shall constitute a waiver of those

objections both in the District Court and on later appeal to the United States Court of Appeals. *See* **Thomas v. Arn**, 474 U.S. 140, 150 (1985); **Small v. Secretary of Health and Human Services**, 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: February 5, 2007**
**New York, New York**

Respectfully Submitted,

The Honorable Ronald L. Ellis
United States Magistrate Judge

**Copies of this Report and Recommendation were sent to:**

Petitioner, pro se
Abel Ortiz
01-A-3211
1743 Garfield Street Fl.2
Bronx, N.Y. 10460

Counsel for Respondent
Chelsea Chaffee
Assistant Attorney General
120 Broadway
New York, N.Y. 10271